UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

MILDRED COATES BURGESS

VERSUS

ALLSTATE INSURANCE COMPANY

CIVIL ACTION

NO. 07-248-JJB

## RULING

This is a homeowner's insurance dispute arising out of damages to plaintiff's home sustained during and after Hurricane Rita. Plaintiff, Mildred Coates Burgess ("Burgess"), brought this action in the 19th Judicial District Court in Louisiana seeking to hold defendant, Allstate Insurance Company ("Allstate"), liable for repairs and damages to her home as well as damages and statutory penalties for defendant's alleged bad faith handling of her claims under Louisiana Revised Statutes 22:1220 and 22:658.[1] On April 16, 2007, the action was removed to this Court.[2] A bench trial is scheduled in this matter on January 12, 2009.[3]

Defendant brings a motion for partial summary judgment (doc. 24) seeking to dismiss plaintiff's claim of bad faith handling of her claims.[4] Burgess has filed an opposition and Allstate has filed a reply.[5] Oral argument with respect to this motion is not necessary. This Court's jurisdiction exists pursuant to 28 U.S.C. § 1332 *et seq.*

---

[1] Under 22:1220 and 22:658, plaintiff seeks damages for mental anguish and anxiety, loss of enjoyment and use of her residence, additional living expenses incurred while she was unable to live in her home, penalties under the two statutes, and costs and attorney's fees. Doc. 1-2, page 3.
[2] Doc. 1.
[3] Doc. 20.
[4] Doc. 24. In its reply to plaintiff's opposition, Allstate "admits there is a genuine issue of material fact as to whether or not any additional sums may be owed to the plaintiff for the damages to her home." Doc. 26-2, page 8.
[5] Docs. 25 and 28, respectively.

1

**Background**

At the time Hurricane Rita occurred, Burgess owned a residence in Baton Rouge, Louisiana. At all relevant times, a homeowner's insurance policy issued by Allstate was in effect.[6] Pursuant to this policy, Allstate has paid a total of $10,783.26 to plaintiff.[7] On November 28, 2005, two months after Hurricane Rita, plaintiff first contacted Allstate concerning property loss.[8] Plaintiff's home was inspected on November 30, 2005.[9] Allstate estimated plaintiff's loss as $1,073.00, and on December 9, 2005 issued a check for $573.06.[10] On December 21, 2005, Burgess informed Allstate that she was concerned about mold and on January 2, 2006 she called defendant for mold adjuster information.[11] On January 16, 2006, RCC Consulting Group inspected Burgess' property for mold per Allstate's request.[12] Burgess also hired Martinez Environmental Surveys to survey her home for mold.[13] Plaintiff sought medical attention from Dr. Lance Bullock on January 18, 2006.[14] Dr. Bullock described Burgess' complaints as psychosis and OCS disorder.[15] Plaintiff complained of fear of contamination of her home due to mold and was referred to Dr. Lynn Simon.[16] She was admitted to Progressive Heath

---

[6] Plaintiff was insured under an Allstate Deluxe Homeowner's Policy with a $161,141.00 limit on structure, $118,399 limit on personal property (contents), and up to twelve months additional living expenses. Policy Declarations, Doc 24-10, page 3. Allstate also states in its memorandum in support of its motion for summary judgment that the policy included $10,000 for mold remediation. Doc. 24-3, page 2.
[7] Established facts, Uniform Pretrial Order, Doc. 19, page 3.
[8] *Id*.
[9] *Id*.
[10] *Id*. This amount represented the estimated loss minus plaintiff's $500.00 deductible.
[11] *Id*. Around this time, Allstate offered plaintiff additional living expenses but Burgess declined because she did not want to travel and she had family staying with her. *Id*.
[12] *Id*. at 4.
[13] *Id*.
[14] *Id*.
[15] *Id*.
[16] *Id*.

2

Center by Dr. Simon on February 15, 2006 and discharged on March 10, 2006.[17] On February 10, 2006, Allstate issued plaintiff a check in the amount of $3,359.73.[18] Plaintiff replaced the roof of her home and the property was re-inspected on October 18, 2006.[19] After this re-inspection, Allstate issued an additional check for $6,850.47 for dwelling damage.[20]

## Analysis

Plaintiff argues that Allstate handled her claims in bad faith and therefore she is entitled to statutory penalties and damages. Plaintiff asserts three separate claims under her policy, one for structural damage, one for damage to the contents of her home, and one for additional living expenses incurred when she could not reside in the home. Burgess also seeks non-pecuniary damages for mental anguish caused by Allstate's alleged bad faith handling of her claims. Allstate argues that it is entitled to summary judgment on plaintiff's bad faith handling claims because there was a continuing reasonable dispute over the extent and amount of Burgess' damages. Allstate further argues that emotional and physical distress damages are not recoverable as a matter of law under the applicable statutes.

### Bad faith handling of plaintiff's claims

Under Louisiana Revised Statute 22:1220, an insurer owes to his insured a duty of good faith and fair dealing. This includes "an affirmative duty to adjust claims fairly

---

[17] *Id*.
[18] *Id*. This check included $690.06 for dwelling and $2,669.67 for mold remediation. *Id*.
[19] *Id*.
[20] *Id*.

3

and promptly and to make a reasonable effort to settle claims with the insured."[21] Knowingly "failing to pay the amount of any claim due to any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause" is a breach of the insurer's duties under the statute.[22] Similarly, under Louisiana Revised Statute 22:658, an insurer must pay the amount of a claim due to the insured within thirty days of receipt of satisfactory proof of loss from the insured.[23] "Failure to make such payment within thirty days after receipt of such satisfactory written proofs…when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty…."[24] The Louisiana supreme court has noted that 22:658 "is penal in nature, and consequently, must be strictly construed."[25] As one court recently explained:

> Three elements must be satisfied for the plaintiffs to recover the statutory penalties. Specifically, the insurer must receive a satisfactory proof of loss; (2) the insurer must fail to pay the claim within the applicable statutory period; and, (3) the insurer's failure to pay must be arbitrary, capricious, or without probable cause.[26]

Proof of loss

In order to prevail on her claim for bad faith handling of her claims under either 22:1220 or 22:658, Burgess must first show that she made a satisfactory proof of loss. The Louisiana supreme court has stated that, "one who claims penalties and attorney fees has the burden of proving that the insurer has received 'satisfactory proof of loss'

---

[21] La. R.S. 22:1220.
[22] La. R.S. 22:1220(B)(5).
[23] La. R.S. 22:658(A)(1).
[24] La. R.S. 22:658(B)(1).
[25] Hart v. Allstate Ins. Co., 437 So.2d 823, 827 (La. 1983).
[26] Shadow Lake Management Co., Inc. v. Landmark American Ins. Co., 2007 WL 1959236, *3 (E.D. La. July 2, 2007).

4

as a necessary predicate to a showing that the insurer was arbitrary, capricious or without probable cause."[27] It is only upon receipt of this proof of loss that the statutory time periods of thirty and sixty days begin to run.[28] Although the requirement of furnishing proof of loss "is not rigorously interpreted,"[29] and need not be in writing or any particular format,[30] the proof of loss must consist of "sufficient facts which fully apprise the insurer of the extent of damages sought."[31] An insurer who was not provided adequate proof of loss by the insured cannot be held liable for an arbitrary or capricious failure to pay the insured's claim.[32]

---

[27] Hart v. Allstate Ins. Co., 437 So.2d 823, 827-28 (La. 1983).

[28] As the court in *Shadow Lake* noted:
> The running of the applicable statutory limits begins when the insurer receives a satisfactory proof of loss. Thus "a satisfactory proof of loss is a necessary predicate to a showing that the insurer was arbitrary or capricious." The claimant has the burden of proving that the insurer received satisfactory proof of loss.

Shadow Lake Management Co., Inc. v. Landmark American Ins. Co., 2007 WL 1959236, *3 (E.D. La. July 2, 2007) (quoting Boudreaux v. State Farm Mut. Auto. Ins. Co., 896 So.2d 230, 233 (La. App. 4 Cir. 2005)).

[29] 15 William Shelby McKenzie and H. Alston Johnson, III, Louisiana Civil Law Treatise, Insurance Law and Practice §343 (3d ed.)

[30] *Id*. Citing Morgan v. American Fire and Indem. Co., 506 So.2d 785 (La. App. 1st Cir. 1987) (Plaintiff filled out proof of loss and mailed it to insurer; however, insurer failed to inform plaintiff that proof of loss was insufficient. The court held that the statutory period began on the date plaintiff mailed proof of loss.); Mamou Farm Services, Inc. v. Hudson Ins. Co., 488 So.2d 259 (La. App. 3d Cir. 1986) (Proof of loss deemed sufficient on date insurer was aware of the loss and the fact that it was a total loss where defendant insurer did not answer plaintiff's request for forms to execute written proof of loss.). *See also* Gatte v. Coal Operators Cas. Co., 225 So.2d 256 (La. App. 3 Cir. 1969) (court stated that defendant insurer must have actual knowledge of the facts of the loss for there to be sufficient proof of loss); Hershell Corp. v. Fireman's Fund Ins. Co., 743 So.2d 698, 707 (stating that the proof of loss requirement is "flexible and does not require any formal style. It only requires that 'the insurer receives sufficient information to act on the claim, the manner in which it obtained the information is immaterial.'" (quoting Sevier v. U.S. Fidelity & Guar. Co., 497 So.2d 1380, 1384 (La. 1986))).

[31] Baker v. Dearie, 2006 WL 1968902, *3 (E.D. La. June 28, 2006).

[32] *See e.g.* Wilkins v. Allstate Ins. Co., 173 So.2d 199, 202 (La. App. 1st Cir. 1965) in which the court explained:
> The purpose of the proof of loss and demand required by the pertinent statute is to fully apprise and inform the insurer of the claim. It is obvious there can be no arbitrary or capricious refusal to pay in the absence of the insurer's knowledge of the existence of the claim. The requirement of proof of loss stipulated in the statute may be fulfilled otherwise than by furnishing such proof on forms furnished by the insurer. Any action on the part of the insured which fully apprises the insurer of the nature, extent and circumstances of the claim satisfies this obligation on the part of the insured.

*See also* Reed v. State Farm Mutual Auto. Ins. Co., 857 So.2d 1012, 1024 (La. 2003) in which the supreme court held that insurer's partial tender was "neither untimely nor inadequate, as [insured] did not supply State Farm

Allstate asserts that as to plaintiff's content and additional living expenses claims, she failed to provide satisfactory proof of loss "during the claims adjustment process."[33] Allstate correctly points out that plaintiff's complaint fails to assert a claim for damaged contents. Further, Allstate states that the only list of damaged contents it received from plaintiff was a list presented to its counsel days before plaintiff's deposition was taken.[34] Similarly, plaintiff presented defendant's counsel with a list of additional living expenses days before her deposition. The record reveals that the list of additional living expenses consisted of two entries, one simply stating "food 7 months 700" and the second "utilities seven months 300."[35] Although this Court realizes that proof of loss is not a rigid requirement and that proof need not be in any particular form, we find that plaintiff's two lists, submitted prior to her deposition in this suit, were not satisfactory proofs of loss sufficient to begin the statutory time period. Because Burgess failed to provide Allstate sufficient information for it to act on her content and additional living expenses claims, she cannot now seek to hold Allstate liable for statutory penalties based on these claims. Accordingly, we grant Allstate's motion for summary judgment with respect to plaintiff's contents and additional living expenses claims.

---

with satisfactory proof of loss…". The Louisiana supreme court further explained that "a plaintiff who possesses information that would suffice as satisfactory proof of loss, but does not relay that information to the insurer is not entitled to a finding that the insurer was arbitrary or capricious." *Id.* at 1021.

[33] Doc. 24-3, pages 9 & 10. This Court is unclear as to what temporal period constituted the "claims adjustment process."

[34] This list consisted of two itemized pages, mostly clothing. Doc. 25-13, pages 1 & 2.

[35] 25-13, page 3. Plaintiff did not provide any supporting information for this list, such as a utility bill.

Arbitrary and capricious[36]

Plaintiff also bears the burden of proving that Allstate's failure to pay was arbitrary, capricious, or without probable cause.[37] Unlike plaintiff's contents and additional living expenses claims, Allstate does not contest that plaintiff made a satisfactory proof of loss as to her structure claim. Instead, Allstate argues that it paid all undisputed amounts on plaintiff's claim timely and that there was a reasonable dispute as to the remaining portion of plaintiff's claim. "An insurer's failure to pay is not arbitrary, capricious or without probable cause if the insurer has acted in good faith reliance on a reasonable defense to the claims or if there is a reasonable disagreement between the insured and the insurer as to the amount of the loss."[38] Courts have consistently interpreted both statutes' "arbitrary, capricious or without probable cause" language to be synonymous with "vexatious."[39] The Louisiana supreme court has explained that "both phrases [arbitrary and capricious and vexatious refusal to pay] describe an insurer whose willful refusal of a claim is not based on a good-faith defense."[40]

"Louisiana courts have recognized that insurance companies have a right to litigate questionable claims without being subjected to damages and penalties"[41] and an insurer should not be held liable for bad faith handling of an insured's claim when there was "reasonable disagreement between the insured and the insurer as to the amount of

---

[36] Neither party explicitly argues the timing under either statute. Thus, this Court will proceed directly to an analysis of defendant's behavior as arbitrary or capricious.

[37] Shadow Lake Management Co., Inc. v. Landmark American Ins. Co., 2007 WL 1959236, *3 (E.D. La. July 2, 2007).

[38] *Id*.

[39] *See e.g.* Reed v. State Farm Mutual Auto. Ins. Co., 857 So.2d 1012, 1021 (La. 2003); Louisiana Maintenance Serv. Inc. v. Certain Underwriters at Lloyd's of London, 616 So.2d 1250, 1253 (La. 1993).

[40] Reed v. State Farm Mutual Auto. Ins. Co., 857 So.2d 1012, 1021 (La. 2003). The *Reed* Court also explained that "whether or not a refusal to pay is arbitrary, capricious, or without probable cause depends on the facts known to the insurer at the time of its action." *Id*.

[41] Holt v. Aetna Cas. & Sur. Co., 680 So.2d 117, 131 (La. App. 2 Cir. 1996).

7

the loss."[42] Allstate asserts that it paid the undisputed amounts of Burgess' claim and that because there was a dispute over additional amounts, it is entitled to partial summary judgment. In opposition, plaintiff asserts that Allstate's actions in sporadically paying damages through three separate checks using "absurdly low estimates" and improper inspections of plaintiff's property over an extended period of time while "ignoring plaintiff's expert reports and actual amounts which plaintiff paid for the repairs to her home" is proof enough of Allstate's bad faith in handling her claim.[43] Plaintiff further asserts that "the 'determination that an insurer's handling of a claim is arbitrary and capricious, for purposes of penalty statutes, is a factual finding.' Accordingly, [plaintiff argues that] summary judgment should not be granted and the issue of bad faith penalties should go to the jury."[44]

      This Court finds that the issue is simply too close to call and that the determination of whether Allstate's actions were "vexatious" is a question more properly addressed at trial. While Allstate argues that a reasonable disagreement existed as to the amount of plaintiff's loss, plaintiff argues that defendant's sporadic payments much lower than her actual damages indicate that any dispute over the amount of her loss was outside the bounds of reasonableness. Such a factual determination is not appropriate within the confines of summary judgment.[45] Therefore, we deny defendant's motion for summary judgment as to bad faith handling of plaintiff's structure claim.

---

[42] Shadow Lake Management Co., Inc. v. Landmark American Ins. Co., 2007 WL 1959236, *3 (E.D. La. July 2, 2007).
[43] Opposition to Allstate's motion for partial summary judgment, Doc. 25, page 12.
[44] Doc. 25, page 12 (citing Calogero v. Safeway Ins. Co. of Louisiana, 753 So.2d 170, 173 (La. 2000)). This Court points out that the matter is set for bench rather than jury trial.
[45] The court notes that other courts have granted summary judgment in favor of insurers dismissing an insured's claim of bad faith handling. However, in such cases plaintiffs failed to offer any facts indicating insurer acted arbitrarily. *See e.g.* Gates v. Auto Club Ins. Co., 2007 WL 1464259 (E.D. La. May 17, 2007); Baker v. Dearie, 2006 WL

### Non-pecuniary damages

Finally, Allstate argues that in the event this Court finds it acted in bad faith, plaintiff cannot recover damages for mental anguish or emotional distress as a matter of law.[46] In response, Burgess argues that under 22:1220, an insurer who breaches its duties to the insured "shall be liable for any damages sustained as a result of the breach"[47] and that such damages, by the terms of the statute itself, include non-pecuniary damages.[48]

The statute states, in pertinent part, that "in addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties…"[49] We are aware of the fact that some courts have interpreted 22:1220 to allow for general damages, including an award for mental anguish, based on the terms of the statute without more.[50] However, under Louisiana

---

1968902, *2 n. 7 (E.D. La. 2006) ("The fact that the determination of penalties is a question of fact to be presented to the fact-finder does not eliminate the issue from the province of summary judgment where there is shown to be no genuine issue of material fact as to the vexatiousness of the parties' actions.").

[46] Doc 24-3, page 19. In support of this argument, defendant cites the recent Louisiana supreme court case, *Sher v. Lafayette Ins. Co.*, 988 So.2d 186 (La. 2008). There, insured brought a claim for bad faith handling under 22:658. The lower court had denied mental anguish damages based on article 1998. The supreme court found that the lower court's failure to include a line item for mental anguish on the jury verdict form was harmless, as "there was no legal basis for the jury to have found damages for mental anguish." *Id.* at 203. This Court does not find *Sher* to be dispositive of whether mental anguish damages are available solely through 22:1220 or if the requirements of article 1998 must also be met. Thus, instead of basing our analysis on *Sher* as defendants would have us do, we offer the following analysis.

[47] La. R.S. 12:1220(A).

[48] Doc. 25, page 12-14.

[49] La. R.S. 12:1220(C). "General damages are those which may not be fixed with pecuniary exactitude; instead, they 'involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms.'" Kaiser v. Hardin, 953 So.2d 802, 808-9 (La. 2007) (quoting Keeth v. Dept. of Pub. Safety & Transp., 618 So.2d 1154, 1160 (La. App. 2 Cir. 1993)).

[50] *See* Orellana v. Louisiana Citizens Prop. Ins. Corp., 972 So.2d 1252, 1256 (La. App. 4 Cir. 2007). *See also* Clark v. McNabb, 878 So.2d 677, 686 (La. App. 3 Cir. 2004); Weiss v. Allstate Ins. Co., 512 F.Supp.2d 463 (E.D. La. 2007) in which the court explained:

> By its plain terms, the statute clearly establishes that is an insurer intentionally commits one of the specified types of conduct, the consequences are that the insurer is liable for

9

law, "laws on the same subject matter must be interpreted in reference to each other."[51] Therefore, La. R.S. 22:1220 should be read *in pari materia* with Louisiana Civil Code article 1998, which sets out when damages for non-pecuniary losses are recoverable.[52] Our conclusion that plaintiff's ability to recover non-pecuniary losses is dependent on article 1998 is also supported by the text of 22:1220, because we interpret the general damages to which a plaintiff "is entitled" under the statute as those allowed under article 1998.[53]

---

> the damages imposed by the statute, including "general or special damages." …. Allstate's reliance on the well-established principle that nonpecuniary damages cannot be recovered for breach of an insurance contract because the contract is not intended to gratify a nonpecuniary interest and plaintiffs have not shown that the insurer intended, through its failure, to aggrieve the feelings of the insured, is therefore misplaced *See* La. Civ. Code art. 1998. Plaintiffs' claim for general damages such as emotional distress does not arise from a simple breach of their insurance contract. Rather, it is based on the asserted violation of Allstate's statutory duty under Section 22:1220 in one of the specified ways. The prohibited acts set forth in Section 22:1220(B) amount to intentional and vexatious wrongdoing directed toward an insured. The general and special damages award is thus aimed at, and limited to, a caliber of misconduct that goes well beyond an ordinary breach of contract. If plaintiffs can prove that Allstate acted in bad faith by knowingly committing or performing one of these acts, proven general or special damages are recoverable.

*Id.* at 474-75.

[51] La. Civ. Code art. 13.

[52] La. Civ. Code article 1998 states:

> Damages for nonpecuniary loss may be recovered when the contract, because of its nature, is intended to gratify a nonpecuniary interest and, because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss.
>
> Regardless of the nature of the contract, these damages may be recovered also when the obligor intended, through his failure, to aggrieve the feelings of the obligee.

[53] *See e.g.* Veade v. Louisiana Citizens Property Corp., 985 So.2d 1275, 1280 (La. App. 4 Cir. 2008) (explaining while 22:1220 allows for an award of general damages, "La C.C. art. 1998 limits the remuneration to nonpecuniary losses as a result from contracts for non-pecuniary interests. Thus, in order to recover for mental anguish, there must be evidence of the breach by the insurer and the intent to aggrieve the plaintiff.").

Because a contract for insurance is intended to satisfy a pecuniary interest,[54] the second paragraph of article 1998 is applicable. Therefore, in order to recover damages for mental anguish, plaintiff will have to show that Allstate intended to aggrieve Burgess' feelings. While we doubt Burgess' ability to prove such intent on her insurers' part, a determination one way or the other with regard to Allstate's intent is a factual question not suitable for summary judgment. Accordingly, we deny defendant's motion for summary judgment regarding Burgess' claims for emotional distress damages.[55]

## Conclusion

This Court **GRANTS** in part and **DENIES** in part Allstate's motion for partial summary judgment (doc. 24). Because plaintiff failed to meet her burden of showing she provided her insurer with satisfactory proof of loss, Allstate's motion for partial summary judgment is **GRANTED** with respect to plaintiff's claims for content and additional living expenses. Because the determination of whether Allstate's actions were arbitrary or capricious regarding its payment on plaintiff's structure claim is a question of fact better suited to determination at trial, we **DENY** Allstate's motion for partial summary judgment with respect to plaintiff's structure claim. Similarly, because we find that Allstate's intent with regard to plaintiff's non-pecuniary losses is a matter better suited to determination

---

[54] Bye v. American Income Life Ins. Co., 316 So.2d 164 (La. App. 4 Cir. 1975); Perry v. State Farm Fire & Casualty Co., 700 F.Supp 306 (M.D. La. 1988); Dixon v. First Premium Ins. Group, 934 So.2d 134, 146 (La. App. 1 Cir. 2006) ("It is well settled in Louisiana law that the object of a contract of insurance is the payment of money.").

[55] In the alternative, Allstate argues that plaintiff will not be able to show causation between its actions and plaintiff's non-pecuniary damages. Allstate asserts plaintiff's concern over contaminants in her home predated any damage sustained during Hurricane Rita. Doc. 24-3, page 26-29. As Allstate argues, "The physical and emotional complaints expressed by Burgess…prior to Hurricane Rita are identical to those expressed after Hurricane Rita."). *Id*. at 29. Like our holding regarding plaintiff's ability to prove Allstate's intent at trial, we also will allow plaintiff the chance to prove causation at trial.

11

at trial, we **DENY** Allstate's motion for partial summary judgment with respect to plaintiff's claim for mental distress or emotional anguish damages.

Signed in Baton Rouge, Louisiana, on December 5, 2008.

**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**